# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

HAKIM Q. NASEER,

        Plaintiff,

    v.                                    Case No. 08-CV-941

ADAM GEGARE, CAPTAIN SLAYTON,
SERGEANT RICK VISOR,
OFFICER GEORGE BOULAMATSIS,
SERGEANT THOMAS FORTMANN,
SERGEANT JASON HEMER,
OFFICER ARTHUR STRACK, and
SERGEANT ROGER CALLEWAERT,

        Defendants.

---

# ORDER

The *pro se* plaintiff, Hakim Q. Naseer, who is incarcerated at the Wisconsin Secure Program Facility, is proceeding *in forma pauperis* on a claim under 42 U.S.C. § 1983, that the defendants violated his Eighth Amendment rights on January 19, 2008, by requiring him to walk naked across a floor covered in broken glass, strip searching him in front of other inmates, and depriving him of clothes for several hours. This matter now comes before the court on the plaintiff's motion for sanctions, the defendants' motion for summary judgment, and the plaintiff's motion to disregard the defendants' reply brief.

## I.    PLAINTIFF'S MOTION FOR SANCTIONS

On December 1, 2009, the plaintiff filed a motion asking the court to impose monetary sanctions on defense counsel "for recklessly using counterproductive

behavior in a sworn affidavit." This apparently refers to Attorney Burkert-Brist's erroneous assertion, in support of a motion to stay, that plaintiff had an open criminal charge related to the facts in this case. (Plaintiff's Motion for Sanctions, Document 81 at 3.) Because the criminal offense date for that charge showed that it was not related to the events in this case, this court denied the motion to stay but stated:

> [T]here is no indication that counsel maliciously fabricated documents, as Naseer alleges. Rather, it appears that counsel was led astray by an error in the online records. . . . The court declines to order monetary sanctions for counsel's mistake.

(Court's Order of October 29, 2009, Document 80 at 4.) The plaintiff's new motion for sanctions does not add anything significant to the plaintiff's previous request for sanctions, and it will be denied for the reasons stated in the prior order.

## II. PLAINTIFF'S MOTION TO DISREGARD DEFENDANTS' REPLY BRIEF

On February 2, 2010, the plaintiff filed a motion asking the court to "disregard" the defendants' reply brief in support of their motion for summary judgment. The reply brief argues that the court should not consider the plaintiff's factual submissions because they do not comply with Civil L.R. 56.2(b)(1). The plaintiff contends that although his response to the defendants' proposed findings of fact did not perfectly comply with the applicable local rules, he did the best he could as a *pro se* litigant with a diagnosed mental illness, and that he cited evidentiary materials in the record to support his claims. Because the plaintiff's response to the defendants' proposed facts is comprehensible and supported by citation to proper evidentiary materials, the court will exercise its discretion to consider the plaintiff's otherwise

admissible submissions despite his failure to comply with the format dictated by local rule. However, the plaintiff's motion to disregard the defendants' reply brief will be denied.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**B.     Facts**[1]

In January of 2008, plaintiff Hakim Q. Naseer was an inmate at the Racine Correctional Institution – Sturtevant Transitional Facility (RCI-STF). The Wisconsin Department of Corrections (DOC) employs all eight defendants at RCI-STF: Captain Adam Gegare, Captain David Slayton, Sergeant Rick Visor, Sergeant Thomas

---

[1]Facts are taken from the Defendants' Proposed Findings of Fact, the verified Complaint, and the affidavits submitted by the parties.

Fortmann, Sergeant Jason Hemer, Sergeant Roger Callewaert, Officer George Boulamatsis and Officer Arthur Strack.

On January 19, 2008, inmate Shaun Matz escaped from his cell in the segregation unit at RCI-STF. The unit was a complete mess, with over 75% of the cell windows broken as well as three windows at the officer station. Debris and pieces of glass were strewn all over. The floor had one to one and one-half inches of standing water. Several inmates had their hands and arms out of their cell windows and were throwing things onto the floor. To restore order, several inmates were moved to other units and some were moved to other institutions.

During the commotion in the segregation unit at RCI-STF on January 19, 2008, the plaintiff was throwing liquids out of his cell window and threatening staff. Because of the ongoing disturbance, the officers had to remove the plaintiff from his cell, but he initially refused to leave. Defendant Gegare handled the strip search and removal of the plaintiff to a segregation cell, while a cell entry team comprised of the other defendants provided backup. Gegare directed the plaintiff to remove his clothes, but the plaintiff did not comply until after Gegare pointed his Taser in the plaintiff's direction. After the plaintiff acquiesced and removed his clothes, Gegare performed a strip-search on the plaintiff at the cell.[2]

---

[2] According to Gegare's affidavit, he did not have an opportunity to move the plaintiff to a private place for the search because of the disturbance and fluid situation. According to the plaintiff, however, "there was no such thing as an 'on-going disturbance' on [his] part" at the time he was removed from his cell, as the conduct report signed by Gegare regarding the plaintiff's throwing of liquids reflects an incident time of 5:00 a.m., and he was not placed in the new cell until 11:30 a.m. (Affidavit of Hakim Naseer [Naseer Aff.], at 1-2.)

After the strip search was completed, the plaintiff came to the door of his cell, and the members of the cell entry team restrained him and escorted him barefoot to a new, controlled segregation cell. The plaintiff did not complain to the defendants of any glass on the floor or any injuries to his feet. However, another inmate, Jose A. Serra, was conveyed to the hospital after suffering deep cuts to his feet from broken glass. The plaintiff was placed in the controlled segregation cell without any clothes or bedding at 11:30 a.m. Later the same day, at either 4:40 p.m. or approximately 8:45 p.m., the plaintiff received a mat and gown.[3]

## C.    Analysis

In support of their motion for summary judgment, the defendants offer that they did not force the plaintiff to walk on broken glass when they moved him to another cell. Even if there was broken glass in the area, the defendants maintain that the plaintiff was not injured by it and that they acted reasonably in moving him quickly to a separate cell, due to the urgent need to re-establish order in the chaotic segregation unit. The defendants also contend that their strip search of the plaintiff was necessary to make sure that inmates were not harboring shards of broken glass or other weapons, and that a more private strip search was not possible due to the emergency situation, during which an inmate was running loose destroying property and the plaintiff and other inmates were throwing things from their cells and yelling.

---

[3] The observation records attached to the Affidavit of Ruth Lechner-Thomforde indicate that the plaintiff was given a mat and gown at 4:40 p.m., but, in response to a request for admission, the defendants admitted providing them "at approximately 8:45 p.m." (Defendants' Response to Request for Admissions No. 1, attached to Naseer Aff. at 11.) The plaintiff avers that he was "kept totally nude without any bedding in a cold cell for 5 to 10 hours." Naseer Aff. at 1.

The defendants further submit that the plaintiff's detention without clothing was reasonable under the circumstances and too brief to violate the Eighth Amendment.

In response, the plaintiff contends that material disputed facts preclude summary judgment. He maintains that the defendants were aware of the broken glass when they forced him to walk across the floor barefoot, and that they tampered with the records regarding how long he was deprived of clothing. He further argues that their actions in removing him from his cell were "completely needless" as he "was slowly making progress to cooperate with any and all orders/directives." (Plaintiff's Brief in Opposition at 3.)

### 1.    Walking Across Floor with Broken Glass

Serious injury is not required to establish a violation of the Eighth Amendment, but the extent of the injury suffered is a relevant factor in determining whether prison guards used excessive force. *Wilkins v. Gaddy,* 559 U.S. ___,130 S.Ct. 1175, 1178 (2010) (*per curiam*). For purposes of this summary judgment motion, the court accepts plaintiff's version of the facts and assumes that the defendants were aware of broken glass on the floor when they escorted the plaintiff barefoot to his new cell, and were also aware that another inmate was hospitalized with foot injuries from stepping on glass. However, the plaintiff does not maintain that he suffered any pain or injury as a result of walking barefoot. Therefore, even accepting the plaintiff's account that the defendants acted with unnecessary haste and knowingly compelled him to walk in a hazardous area, the defendants are entitled to summary judgment

on this claim.  *See id.* (stating that "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" and that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

## 2.  Public Strip Search

Searches of a prisoner's body that are "totally without penological justification are considered unconstitutional."  *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (internal quotation omitted).  To prevail on a strip search claim, a plaintiff must "show that the searches were conducted in a harassing manner intended to humiliate and cause psychological pain."  *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).  Here, the plaintiff does not contest the justification for the search, but he contends that defendant Gegare should have conducted it in a more private location, as he was not creating an "on-going disturbance" and was "slowly making progress to cooperate with any and all orders/directives."  (Naseer Aff. at 1-2; Plaintiff's Brief in Opposition at 3.)  However, the plaintiff does not submit any evidence disputing that the overall conditions in the segregation unit were chaotic. The plaintiff's level of cooperation does not undermine defendant Gegare's averment that he was unable to conduct the strip search more privately under all the circumstances presented in the unit.  Furthermore, the plaintiff does not describe any behavior by Gegare or the other defendants that would suggest that the strip search was conducted in a harassing manner.  *Cf. Mays*, 575 F.3d at 650 (holding that strip

search claims should have gone to the jury where guards provided no justification for strip searches and witnesses testified to guards' demeaning comments and dirty gloves); *Mercado v. Dart*, 604 F.3d 360 (7th Cir. 2010) (affirming jury verdict for plaintiffs who were subjected to strip searches that included "having large numbers of detainees drop their pants simultaneously to raucous hooting and taunts from guards of both sexes"). Accordingly, the strip search claim will be dismissed.

### 3.    Placement in Cell Without Clothing

To establish an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Here, the plaintiff avers that the controlled segregation cell in which he was kept was "cold," but he does not describe the temperature or any resulting discomfort. Nor does the plaintiff present any evidence that he complained to any of the defendants regarding feeling cold, or that any of the defendants knew that the

plaintiff's cell was cold.  Similarly, while it is undisputed that the defendants placed the plaintiff in his new cell without any clothing, there is no evidence that any of the defendants were aware that he remained without clothing for several hours after they escorted him to his new cell, or that the plaintiff requested clothing from anyone.

In responding to the plaintiff's request for admissions, the defendants stated that a mat and gown were provided to him at 8:45 p.m.  In their motion for summary judgment, the defendants cite observation records indicating that the mat and gown were provided several hours earlier, at 4:40 p.m.  Accepting the time most favorable to the plaintiff, he was deprived of clothing for just over nine hours from when he was placed in the new cell at 11:30 a.m.   Even if the defendants knew that the plaintiff remained without clothing in his cell from mid-day until that evening, such a deprivation falls far short of the cases where denial of clothing was found to be a potential Eighth Amendment violation.   *Compare Mays*, 575 F.3d at 648-49 (although inmate was not issued certain clothing items, which caused him to suffer from hurt ears and numb hands, and to catch colds and feel frostbite, this did "not rise to the level of the objectively serious harm necessary to show an Eighth Amendment violation"); *with Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (summary judgment reversed where inmate spent five days naked in a cell with only a bare concrete slab to sleep on, and cell was so cold that inmate had to walk 14 hours a day to stay warm), and *Del Raine v. Williford*, 32 F.3d 1024, 1031 (7th Cir.

1994) (summary judgment reversed where inmate was repeatedly placed naked in cell with an open window and an outdoor wind chill of 40 to 50 degrees below zero).

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for sanctions (Docket #81) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to disregard the defendants' reply brief (Docket #100) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #82) be and the same is hereby **GRANTED**; and,

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED** on its merits together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge